UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

PIAGGIO GROUP AMERICAS, INC.,   )
 )
     *Plaintiff*,   )   Case No.:
 )
v.   )
 )
ADAMO MOTION, INC. &amp;   )
STEVE WATTS,   )
 )
     *Defendants*.   )

## COMPLAINT

Plaintiff, Piaggio Group Americas, Inc., by and through undersigned counsel, as and for its complaint against Defendants, Adamo Motion, Inc. and Steve Watts, hereby alleges as follows:

## PARTIES

1.    Plaintiff, Piaggio Group Americas, Inc. ("Plaintiff" or "PGA"), is a corporation organized under the laws of the State of Delaware with a principal place of business at 860 Washington Street, 9th Floor, New York, NY 10014.

2.    Defendant, Adamo Motion, Inc. ("Defendant" or "Adamo"), is a corporation organized under the laws of the State of Florida with a principal place of business located at 977 4th Avenue N., Naples, FL 34102.

3.    Defendant, Steve Watts ("Watts"), is an individual who, upon information and belief, is a citizen of the State of Florida with an address of 1370 Curlew Avenue, Naples, FL 34102 and/or 6916 Avalon Circle, Unit 104, Naples, FL 34112.

4.      Upon information and belief, Watts is the president, director, and principal shareholder of Adamo.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over Plaintiff's claims in this matter pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

6.      The Court has personal jurisdiction over Adamo because it is incorporated and located in the state and/or maintains its principal place of business within this state.

7.      The Court has personal jurisdiction over Watts because he is a citizen of the state and resides in the state.

8.      Venue is appropriate within this district under 28 U.S.C. § 1391 because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

*Background*

9.      Plaintiff is the United States subsidiary of Piaggio & C. S.p.A., an Italian motor vehicle manufacturer that produces a range of two-wheeled motor vehicles and compact commercial vehicles under the brands/line makes Piaggio, Vespa, Aprilia and Moto Guzzi.

10.     Plaintiff sells motor vehicles in the United States through a network of dealers located in various states throughout the country.

11. At all relevant times, Adamo was an authorized dealer of Plaintiff's vehicles at dealerships Adamo owned and operated in Naples (the "<u>Naples Dealership</u>"), Gainesville (the "<u>Gainesville Dealership</u>") and Daytona Beach (the "<u>Daytona Beach Dealership</u>" and, together with the Naples Dealership and the Gainesville Dealership, collectively, the "<u>Dealerships</u>"), pursuant to a Dealer Sales and Service Agreement (the "<u>Dealership Agreement</u>") between PGA and Adamo.

12. Pursuant to the Dealership Agreement, Adamo ordered vehicles from PGA for resale to Adamo's customers.

13. PGA fulfilled Adamo's orders by shipping vehicles to Adamo at its Dealerships.

14. Adamo financed the purchase of vehicles from PGA through a floor financing program with Wells Fargo. Adamo's floor financing enabled Adamo to maintain an inventory of vehicles for retail sale while ensuring PGA was timely paid for the vehicles it sold to Adamo at wholesale.

15. The Dealership Agreement required Adamo to maintain floor financing through a responsible financial institution at all times. The Dealership Agreement provided that Adamo's failure to maintain floor financing through a responsible financial institution was a basis for PGA to terminate the Dealership Agreement.

16. Pursuant to the Dealership Agreement and Adamo's floor financing through Wells Fargo, Adamo ordered vehicles from PGA; PGA delivered vehicles to Adamo and invoiced Adamo for each vehicle delivered; Adamo delivered PGA's invoices to Wells Fargo for payment; Wells Fargo paid PGA for the vehicles PGA

delivered to Adamo; and, as vehicles were sold to customers, Adamo paid Wells Fargo for the floor plan financing Wells Fargo provided.

17.    Pursuant to an agreement between PGA and Wells Fargo, in the event Wells Fargo terminated Adamo's floor financing, PGA was obligated to repay Wells Fargo in full for any vehicles in Adamo's inventory for which Wells Fargo had paid PGA and to repossess such inventory (hereinafter, the "Buyback Obligation").

*Adamo's Failure to Pay for Sold Inventory*

18.    On or about May 5, 2025, Wells Fargo terminated Adamo's floor financing because Adamo had failed and refused to pay Wells Fargo for vehicles it had sold to customers at its Dealerships.    Adamo had failed to pay Wells Fargo approximately $200,000 for vehicles it had sold to its customers, in breach of its floor financing agreement with Wells Fargo.

19.    At the time Wells Fargo terminated Adamo's floor financing, Adamo maintained approximately 230 vehicles in its inventory.

20.    Wells Fargo's termination of Adamo's floor financing triggered PGA's Buyback Obligation, Wells Fargo demanded that PGA pay Wells Fargo for the vehicles in Adamo's inventory and repossess the vehicles.

21.    PGA honored its obligation to Wells Fargo and paid Wells Fargo $1,552,000.00.

22.    However, rather than repossess the vehicles in Adamo's inventory, PGA entered into a verbal agreement (the "Verbal Agreement") with Adamo and Watts to

permit Adamo to keep the inventory at its Dealerships to enable Adamo to continue operating as a dealer.

23.    Watts promised PGA that he and/or Adamo would pay PGA the wholesale price for each vehicle immediately upon selling a vehicle to a customer.

24.    Watts made this promise to PGA to induce PGA to forbear repossessing the vehicles in Adamo's inventory, none of which Adamo had paid for and all of which were owned by PGA.

25.    Adamo and/or Watts performed the Verbal Agreement for a short period of time. Adamo and/or Watts sold vehicles to customers and remitted payment to PGA once vehicles were sold.

26.    However, PGA conducted an audit of Adamo's inventory and discovered that Adamo and/or Watts had sold at least 25 vehicles to customers that they had failed to report to PGA as sold (the "Unpaid Inventory").

27.    The wholesale value of the Unpaid Inventory Adamo and/or Watts sold to customers is $163,000.00.

28.    Despite demand, Adamo and/or Watts have failed and refused to pay for the Unpaid Inventory, despite being legally obligated to do so.

29.    Adamo and/or Watts has retained at least $163,000.00, which amount is due and owing to PGA.

**Corporate Identity Agreement**

30.    In addition to the Dealership Agreement, PGA and Adamo entered into a Corporate Identity Program Agreement PGA Support, dated March 28, 2023 (the

"Corporate Identity Agreement"). Pursuant to the Corporate Identity Agreement, PGA agreed to pay for the costs of Adamo implementing certain PGA corporate identity material at its Dealerships, including furniture, signage and flooring displays.

31.    The Corporate Identity Agreement provided that, in the event Adamo's Dealership Agreement terminates within 60 months from the signing of the Corporate Identity Agreement, Adamo is liable to PGA for 100% of the costs PGA paid for corporate identity facilities it provided to Adamo at the Dealerships.

32.    Pursuant to the Corporate Identity Agreement, PGA incurred $175,961.84 in costs to provide Adamo with corporate identity facilities at the Daytona Beach Dealership.

33.    Pursuant to the Corporate Identity Agreement, PGA incurred $67,417.68 in costs to provide Adamo with corporate identity facilities at the Gainesville Dealership.

34.    Adamo's Dealership Agreement for the Daytona Beach and Gainesville Dealerships terminated in 2025, within 60 months from the date of the Corporate Identity Agreement.

35.    As a result of the termination of the Daytona Beach and Gainesville Dealerships, Adamo is liable to PGA for the costs it incurred providing Adamo with corporate identity facilities at each dealership.

36.    PGA has demanded that Adamo reimburse PGA for the costs it incurred providing Adamo with corporate identity facilities at the Daytona Beach and Gainesville Dealerships.

37.     Despite demand, Adamo has failed and/or refused to reimburse PGA for the costs it incurred providing Adamo with corporate identity facilities at each dealership.

## COUNT I – BREACH OF CONTRACT
### (As to Adamo Motion, Inc. Under Dealership Agreement)

38.     Plaintiff repeats and realleges paragraphs 1 through 37 above as if fully set forth herein.

39.     The Dealership Agreement is a contract between PGA and Adamo.

40.     Adamo was required to pay PGA for the Unpaid Inventory under the Dealership Agreement.

41.     Adamo's failure to pay for the Unpaid Inventory is a material breach of the Dealership Agreement.

42.     PGA has suffered damages as a direct and proximate result of Adamo's breach of the Dealership Agreement for which Adamo is liable.

## COUNT II – BREACH OF CONTRACT
### (As to Adamo Motion, Inc. Under Verbal Agreement)

43.     Plaintiff repeats and realleges paragraphs 1 through 42 above as if fully set forth herein.

44.     The Verbal Agreement constituted a valid and enforceable contract between PGA and Adamo for which there was good and valuable consideration in the form of, *inter alia*, PGA's forbearance in repossessing the Unpaid Inventory upon Wells Fargo's termination of Adamo's floor financing.

45.     Adamo was required to pay PGA for the Unpaid Inventory under the Verbal Agreement.

46.     Adamo's failure to pay for the Unpaid Inventory constituted a material breach of the Verbal Agreement.

47.     PGA suffered damages as a direct and proximate result of Adamo's breach of the Verbal Agreement for which Adamo is liable.

## COUNT III – BREACH OF CONTRACT
### (As to Steve Watts Under Verbal Agreement)

48.     Plaintiff repeats and realleges paragraphs 1 through 47 above as if fully set forth herein.

49.     The Verbal Agreement constituted a valid and enforceable contract between PGA and Watts for which there was good and valuable consideration in the form of, *inter alia*, PGA's forbearance in retaking possession of the Unpaid Inventory upon Wells Fargo's termination of Adamo's floor financing.

50.     Watts was a party to the Verbal Agreement because he personally promised to pay PGA for vehicles he sold from the Unpaid Inventory immediately after receiving payment from customers.

51.     Watts was required to pay PGA for the Unpaid Inventory under the Verbal Agreement.

52.     Watts' failure to pay for the Unpaid Inventory constituted a material breach of the Verbal Agreement.

53.    PGA suffered damages as a direct and proximate result of Watts' material breach of the Verbal Agreement for which Watts is liable.

## COUNT IV – FRAUD IN THE INDUCEMENT
### (As to Adamo Motion, Inc.)

54.    Plaintiff repeats and realleges paragraphs 1 through 53 above as if fully set forth herein.

55.    Watts, as an agent of Adamo, made a false statement of material fact in telling PGA that he and/or Adamo would pay PGA the wholesale value of vehicles immediately after a vehicle was sold to a customer.

56.    Watts knew or should have known that his statement to PGA that he and/or Adamo would pay PGA the wholesale value of vehicles immediately after a vehicle was sold to a customer was false.

57.    Watts made such statements to PGA with the intent to induce PGA's reliance on such statements and to forbear from repossessing the Unpaid Inventory after Wells Fargo terminated Adamo's floor financing.

58.    PGA relied on Watts' statements and representations that he and/or Adamo would pay PGA immediately after a vehicle was sold to a customer.

59.    PGA has suffered injury as a direct and proximate result of Watts' false statements of material fact for which Adamo is liable.

## COUNT V – FRAUD IN THE INDUCEMENT
### (As to Steve Watts)

60.    Plaintiff repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.    Watts, in his individual capacity, made a false statement of material fact in telling PGA that he would pay PGA the wholesale value of vehicles immediately after a vehicle was sold to a customer.

62.    Watts knew or should have known that his statement to PGA that he would pay PGA the wholesale value of vehicles immediately after a vehicle was sold to a customer was false.

63.    Watts made such statements to PGA with the intent to induce PGA's reliance on such statements and to forbear from repossessing the Unpaid Inventory after Wells Fargo terminated Adamo's floor financing.

64.    PGA relied on Watts' statements and representations that he would pay PGA immediately after a vehicle was sold to a customer.

65.    PGA has suffered injury as a direct and proximate result of Watts' false statements of material fact for which Watts is liable.

## COUNT VI – CIVIL THEFT
### (As to Adamo Motion, Inc.)

66.    Plaintiff repeats and realleges paragraphs 1 through 64 above as if fully set forth herein.

67.    Adamo knowingly obtained or used, or endeavored to obtain or use, the proceeds of sale of the Unpaid Inventory with felonious intent to deprive PGA of its right to or a benefit from such proceeds, or to appropriate the proceeds to its own use without remitting such proceeds to PGA.

68.     Adamo's retention of the proceeds of sale of the Unpaid Inventory caused PGA to suffer harm for which Adamo is liable.

## COUNT VII – CIVIL THEFT
### (As to Steve Watts)

69.     Plaintiff repeats and realleges paragraphs 1 through 68 above as if fully set forth herein.

70.     Watts knowingly obtained or used, or endeavored to obtain or use, the proceeds of sale of the Unpaid Inventory with felonious intent to deprive PGA of its right to or a benefit from such sale proceeds, or to appropriate the proceeds to his own use without remitting such proceeds to PGA.

71.     Watts' retention of the proceeds of sale of the Unpaid Inventory caused PGA to suffer harm for which Watts is liable.

## COUNT VIII – CONVERSION
### (As to Adamo Motion, Inc.)

72.     Plaintiff repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73.     Adamo sold the Unpaid Inventory without remitting to PGA the proceeds of sale comprising the wholesale cost of such vehicles.

74.     The proceeds of sale comprising the wholesale cost of the Unpaid Inventory is PGA's property.

75.     Adamo wrongfully asserted dominion and control over the proceeds of sale comprising the wholesale cost of the Unpaid Inventory, in an amount not less than $163,000, for which Adamo is liable to PGA.

11

## COUNT IX – CONVERSION
### (As to Steve Watts)

76.     Plaintiff repeats and realleges paragraphs 1 through 75 above as if fully set forth herein.

77.     Watts sold the Unpaid Inventory without remitting to PGA the proceeds of sale comprising the wholesale cost of such vehicles.

78.     The proceeds of sale comprising the wholesale cost of the Unpaid Inventory is PGA's property.

79.     Watts, individually and personally, retained the proceeds of sale comprising the wholesale cost of the Unpaid Inventory without remitting it to PGA.

80.     Watts wrongfully asserted dominion and control over the proceeds of sale constituting the wholesale cost of the Unpaid Inventory, in an amount not less than $163,000, for which Watts is liable to PGA.

## COUNT X – UNJUST ENRICHMENT
### (As to Adamo Motion, Inc.)

81.     Plaintiff repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     PGA conferred a benefit on Adamo in the form of providing the Unpaid Inventory to Adamo.

83.     Adamo took possession of, accepted, and retained the Unpaid Inventory and, thus, had knowledge of the benefit PGA conferred on it.

84.     Adamo retained the proceeds of sale comprising the wholesale cost of the Unpaid Inventory without remitting such amounts to PGA.

12

85.     Under the circumstances it would be inequitable for Adamo to retain the benefits of the proceeds of sale comprising the wholesale cost of the Unpaid Inventory without paying such amounts to PGA.

## COUNT XI – UNJUST ENRICHMENT
### (As to Steve Watts)

86.     Plaintiff repeats and realleges paragraphs 1 through 85 above as if fully set forth herein.

87.     PGA conferred a benefit on Watts in the form of providing the Unpaid Inventory to him and/or to Adamo.

88.     Watts took possession of, accepted, and retained the Unpaid Inventory and, thus, had knowledge of the benefit PGA conferred on him and/or Adamo.

89.     Upon information and belief, Watts individually and personally retained the proceeds of sale constituting the wholesale cost of the Unpaid Inventory without remitting such amounts to PGA.

90.     Under the circumstances it would be inequitable for Watts to retain the benefits of the proceeds of sale comprising the wholesale cost of the Unpaid Inventory without paying such amounts to PGA.

## COUNT XII – BREACH OF CONTRACT
### (As to Adamo Motion, Inc. Under Corporate Identity Agreement )

91.     Plaintiff repeats and realleges paragraphs 1 through 90 above as if fully set forth herein.

92.     The Corporate Identity Agreement is a contract between PGA and Adamo.

93.     Because Adamo's Dealership Agreement with PGA terminated as to the Daytona Beach and Gainesville Dealerships within 60 months from the signing of the agreement, Adamo is liable for 100% of the costs paid by PGA for the corporate identity facilities it provided to Adamo at those dealerships.

94.     Despite demand, Adamo has failed and refused to pay PGA $175,961.84 in costs PGA incurred to provide Adamo with corporate identity facilities at the Daytona Beach Dealership and $67,417.68 in costs PGA incurred to provide Adamo with corporate identity facilities at the Gainesville Dealership.

95.     Adamo's failure to reimburse PGA for such costs is a breach of the Corporate Identity Agreement for which Adamo is liable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1.  Direct damages;

2.  Indirect damages;

3.  Consequential damages;

4.  Incidental damages;

5.  Prejudgment interest;

6.  Post-judgment interest;

7.  Costs; and

8.  Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated:        October 20, 2025

PLAINTIFF,
PIAGGIO GROUP AMERICAS, INC.

By:   */s/ Jamie Combee Novaes*
Jamie Combee Novaes, Esq.
Florida Bar No.: 108447
jnovaes@butler.legal
Butler Weihmuller Katz Craig LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602

Peter K. Rydel, Esq. (PHV Pending)
prydel@gerberciano.com
GERBER CIANO KELLY BRADY LLP

100 Corporate Place, Suite 210
Rocky Hill, CT 06067
T. (860) 333-8239 / F. (646) 350-1901
*Attorneys for Piaggio Group Americas, Inc.*

**Mailing Address:**
P.O. Box 1060
Buffalo, NY 14201